William C. Dresser, SBN 104375
Law Office of William C. Dresser
14125 Capri Drive, Suite 4
Los Gatos, CA 95032
Tel: 408-279-7529
Fax: 408-668-2990
loofwcd@aol.com

Attorneys for Relator
Deanna Lynn Silva

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| United States of America, ex. rel. Deanna Lynn Silva,<br><br>                    Plaintiff,<br><br>v.<br><br>Jiva Health, Inc.; Imran Junaid, M.D.; Jyoti C. Bhat, M.D.; Dr. Anita B. Bhat, M.D.; and Does 1 through 50, inclusive,<br><br>                    Defendants.<br>_____/ | Action No.:<br><br>COMPLAINT OF THE UNITED STATES<br><br>False Claims Act, 31 U.S.C. §§3729, et seq., and Common Law Causes of Action<br><br>DEMAND FOR JURY TRIAL<br><br>Filed under seal for sixty days pursuant to 31 USC § 3730(a)(2) |

The United States of America alleges for its Complaint as follows:

## I. NATURE OF ACTION

1. The United States brings this action to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33 (FCA), and to recover damages and other monetary relief under the common law or equitable theories of fraud, unjust enrichment, payment by mistake of fact, recoupment and disgorgement of illegal profits, and to recover statutory restitution for criminal offenses.

2. These claims are based the submission by Defendants Jiva Health, Inc. (doing business as Jiva Health Sleep Center, Jiva Health Sleep Lab, and Jiva Health - Contra Costa Sleep Clincs); Dr. Imran Junaid, M.D.; Dr. Jyoti C. Bhat, M.D.; Dr. Anita B. Bhat, M.D., and Does of false and fraudulent claims for Medicare payments to the United States in order to receive money when that money was not due. These claims seek damages, reimbursement and statutory restitution pursuant to the False Claims Act for the time period of July 2020 through the present date and to the time of trial and judgment based on defendants sustained fraudulent conduct.

3. This action alleges that from 2017 to the present, Defendants knowingly submitted, or caused to be submitted, thousands of false claims to Medicare for diagnostic sleep studies including titrations performed in locations that violated federal law and/or performed by technologists who were not licensed or certified, in violation of federal law.

4. Management, officers, supervisors, executives of Defendants Jiva Health, Inc. participated in the unlawful scheme to defraud the United States by submitting false claims to the United States for Medicare and Supplementary Medical Insurance payments.

5. Sleep clinics must go through an application and approval process before being permitted to treat Medicare patients.

6. Defendants only obtained approval to treat Medicare patients at some but not all of its sleep clinic locations. However, Defendants treated Medicare patients at all Jiva Health Sleep Clinic locations, and fraudulently represented to Medicare that the patients had been treated at the approved locations.

7. Defendants also deliberately employed unqualified sleep technicians who lacked state or national certifications, in violation of Medicare rules.

8. Defendants also failed to have all sleep studies reviewed by a physician with CMS required certifications and specializations.

9. Defendants submitted false claims to the United States including to the Centers for Medicare and Medicaid Services (CMS) and the Department of Health and Human Services by initial claims for Medicare certification, subsequent claims for certification, and claims for payments which were not in accordance with Medicare and Supplementary Medical Insurance Benefits requirements, all without making any fiscal adjustments.

10. These claims have been made by defendants for services under National Provider Identifier 1285223552, among other NPIs, for sleep studies performed at the following facility locations:

141 Sand Creek Rd, Ste B, Brentwood, CA, 94513

1860 Mowry Ave., Ste 200, Fremont, CA 94538

5709 Market Street, Oakland CA 94608

5924 Stoneridge Dr., Ste 207, Pleasanton, CA

1145 Whiskeytown Ct., Suite A, Redding, CA 96001

8303 Sierra College Blvd, #109B, Roseville, CA, 95661

2001 Union St, Ste 250, San Francisco, CA,94123

2300 Bell Executive Lane, Sacramento, CA 95825

2601 Nut Tree Rd, Ste C, Vacaville, CA, 95687

215 Lennon Lane, Suite 201, Walnut Creek, CA 94598

11. Defendants made false claims and had been receiving money based on false representations that sleep clinic facilities, services and dispensation of medical products met Medicare and Supplementary Medical Insurance benefits requirements including those for Independent Diagnostic Testing Facilities set forth in Title 42 of the Code of Federal Regulations. These included by actively concealing facts from CMS and the Department of Health and Human Services that would show that sleep clinic facilities did not meet federal regulations, by falsely certifying and stating that an authorized supervising registered polysomnographic sleep technologist was acting as supervisor when no registered or certified technologist was present, by falsely certifying and stating that persons providing sleep clinic services were registered technologists when they were not, and by falsely certifying and stating that sleep clinic services were provided at a Medicare approved facility when they were not.

12. Defendants made false claims and had been receiving money based on false representations that all sleep studies at each of ten sleep clinic locations were in fact

13. Defendants paid substandard wages to individuals without sleep technician and technologist experience and without current certifications, and without training and proficiency as evidenced by licensure or certification, and absence of licensure or certification, by the appropriate State health or education department or certification by an appropriate national credentialing body, yet defendants billed CMS for these services.

14. Defendants and each of them were fully aware of these and other instances of services billed to CMS and the Department of Health and Human Services which

were not by individuals who had the training and proficiency as evidenced by licensure or certification by the appropriate State health or education department or by an appropriate national credentialing body. These were all direct violations of the provisions of, among other things, 42 CFR 410.33 and 425.57

15. These violations of federal regulations extended to the provision of services to Medicare patients referred by third persons

16. Defendants did not "Openly post these (11 CFR section 410.33) standards for review by patients and the public" as required by federal regulations, but instead actively concealed the true facts concerning certifications, Medicare and CMS approval, and CMS billing from their employees and the public

17. Relator is an individual employed by defendant Jiva Health, Inc. as a sleep technologist at its Sacramento location.

18. The facts of billing fraud were discovered after Relator commenced working for Jiva Health, Inc. and discovered the absence of registered polysomnographic sleep technologists (RPST) at most of the Jiva Health, Inc. operated sleep clinics, and that the Jiva Health, Inc. operated sleep clinics had multiple Medicare patients every night.

## II. JURISDICTION

19. This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-33, and under common law theories of payment by mistake of fact and unjust enrichment. This Court has jurisdiction over this action under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345 and 1367(a).

20. This Court may exercise personal jurisdiction over defendants and each of them

pursuant to 31 U.S.C. § 3732(a) because at least one of the defendants resides or transacts business in the Northern District of California, and because at least one of the agencies to whom defendants submitted false claims or caused false claims to be submitted maintains its headquarters in this District.

21.  Moreover, 28 U.S.C. § 1407 necessarily confers the jurisdiction of the Court over the parties on this Court to the extent this may be considered or treated as a multi district proceeding.

## III. VENUE

22. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a), because Defendants can be found in, reside in, and/or have transacted business within this Court's jurisdiction, and acts that they committed in violation of the FCA occurred within this district.

23. Venue would also be proper in this District pursuant to U.S.C. § 1407 because this action is subject to consolidation in this District for pretrial proceedings.

## IV. PARTIES

24. Plaintiff, the United States of America, is suing on behalf of the United States Department of Health and Human Services ("HHS") and, specifically, its operating division the Centers for Medicare & Medicaid Services ("CMS").  At all times relevant to this Complaint, CMS administered the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. ("Medicare").

25. The United States brings this action on behalf of the Federal Government and Federal Government programs for Medicare, Supplementary Medical Insurance

benefits and other Federal Government Programs which remit and remitted payment to defendants Jiva Health, Junaid and Bhat(s) for claims submitted by them and on their behalf for remuneration for purportedly Medicare and Supplementary Medical Insurance qualifying services and supplies.

26. Pursuant to 31 U.S.C. § 3730(b)(1), Relator brings this action against defendants Jiva Health, Inc., Imran Junaid, Jyoti Bhat, and Anita Bhat, and their co defendants and their affiliates, departments and subsidiaries, including those persons received benefits by the alter ego pass through use of Jiva Health, Inc. as if it was a duly existing corporate entity, and including Doe defendants on behalf of themselves and of the United States.

27. The Relator Deanna Lynn Silva is an "original source" of information and has direct percipient witness knowledge of suspected fraud. Plaintiff's complaint is based on plaintiff's own discovery of actions constituting fraud.

28. Defendant Jiva Health, Inc. is a business entity formed under the laws of the State of California.

29. Defendant Jiva Health, Inc. performs polysomnographic sleep tests on individuals suffering from potentially life-threatening sleep disorders such as sleep apnea.

30. Plaintiff is informed and believes and thereon alleges that Defendant Jiva Health, Inc. is and at all times relevant to the matters alleged herein has been operated as the alter ego of Defendants Bhats and Junaid. Plaintiff further alleges that Defendants Bhats and Junaid dominated, influenced and controlled the affairs of Jiva Health, Inc.; that at all times relevant to the matters alleged herein there existed a unity of interest and ownership between Defendants Bhats and Junaid and

Defendant Jiva Health, Inc. such that the individuality and separateness of the individuals and the corporation was not maintained, that at all times since the adoption and filing of articles of incorporation of Jiva Health, Inc. the corporation has been a mere shell and naked framework which Defendants Bhats and Junaid used as a conduit for the conduct of their personal, individual affairs; that the corporation was created and continued pursuant to a fraudulent plan, scheme and device whereby its income, revenue and profits were diverted to Defendants Bhats and Junaid and/or to entities that they control, including that money received in the name of the corporation was obtained fraudulently and the corporate entity had no legal right to transfer the income or profits to individual Defendants Bhats and Junaid, that by virtue of the transfer of income and profits the corporate entity is now incapable of responding to the obligations of the corporation for the claims set forth in this proceeding, and that the liability of the parties to the plaintiff United States is of such character that the use of the corporation fiction constitutes a  fraud on the corporation's creditors, including the plaintiff; that adherence to the fiction of  the corporation's separate existence would, under the circumstances, sanction a fraud and promote injustice; that the corporation was organized as a mere shell and sham, without true capital, assets, or form or structure; and that the corporation is insolvent and will be unable to respond in the amount due and owing according to the claims stated by Plaintiff in the within action.

31. Each of Defendants Imran Junid, Jyoti C. Bhat aka Jyoti Bhat Chari, and Anita B. Bhat are individuals residing in the County of Contra Costa in the State of California within the Northern District of California.

32. The persons identified as Doe defendants are not fully known to relator, who thus identifies them under said fictitious names. Each are legally responsible to the United States for their active and passive role in the fraud which is the subject of this action.

## V. THE LAW

33. The FCA provides for the award of treble damages and civil penalties for, inter alia, knowingly presenting or causing to be presented false or fraudulent claims for payment to the United States government and for knowingly making or using false records or statements material to false or fraudulent claims paid by the United States, and for conspiracy to commit those violations. 31 U.S.C. §§ 3729(a)(1), (2) (3); 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)C) (as amended).

34. The FCA provides, in pertinent part, that a person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

(a)(1) (C) conspires to commit a violation of subparagraph (A), [or] (B)…

is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains.  31 U.S.C. § 3729.

35. For purposes of the False Claims Act,

(1) the terms "knowing" and "knowingly"—

(A)   mean that a person, with respect to information—

(i) has actual knowledge of the information;

(ii)  acts in deliberate ignorance of the truth or falsity of the information; or

(iii)  acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729 (b)(1)

36. In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., known as the Medicare program. Entitlement to Medicare is based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426A. Medicare is administered by CMS.

37. Medicare is divided into four parts: Part A, Part B, Part C, and Part D.  This case concerns payments made under Medicare Part B.  Medicare Part B covers, among other things, payment for physicians' services, services and supplies incident to physicians' services, and diagnostic tests.

38. All Medicare providers must enroll in the program as providers, and are expected to deal honestly with the Government and with patients.

39. Clinics must enter into participation agreements with Medicare using Form CMS-855B to establish eligibility to participate in the Medicare program.  Clinics also complete CMS-855B to change information or to reactivate, revalidate and/or terminate Medicare enrollment.

40. Medicare regulations require providers and suppliers to comply with applicable statutes, regulations and guidelines in order to be reimbursed by Medicare.

41. When participating in Medicare, a provider has a duty to be knowledgeable of the

statutes, regulations, and guidelines for coverage of services.  42 C.F.R. § 424.516(a)(1); 42 C.F.R.  § 424.516(a)(2).

42. Form CMS-855B is the Medicare Enrollment Application for independent diagnostic testing facilities.  An authorized official must sign the "Certification Section" in Section 15 of Form CMS-855B, which "legally and financially binds [the] supplier to the laws, regulations, and program instructions of the Medicare program."

43. The individual signing the certification statement also certifies that the information contained in the enrollment form is "true, correct, and complete."

44. The Centers for Medicare and Medicaid Services (CMS) establishes national coverage determinations (NCDs) for items and services furnished through Medicare.

45. CMS states effective July 2025 that sleep studies can be by an RPSGT or by sleep tech if supervised by an RPSGT:

HST scoring must be performed by an individual certified by the Board of Registered Polysomnographic Technologists as a Registered Polysomnographic Technologist (RPSGT), or equivalent, or by a polysomnographic technician under the supervision of a RPSGT, or by a Registered Respiratory Therapist-Sleep Disorder Specialist (RRT-SDS) or a Certified Respiratory Therapist-Sleep Disorder Specialist (CRT-SDS), or equivalent. RPSGTs, RRT-SDS, CRT-SDS and polysomnographic technicians must meet the standards for such individuals promulgated by the American Academy of Sleep Medicine Standards for Accreditation of Laboratories for Sleep Related Breathing Disorders, or by the Accreditation Commission for Health Care, Inc. Standards for Accreditation for Sleep Programs or by the National Board for Respiratory Care (NBRC) Inc. and be

licensed or certified by the state in which they practice, if such licensure or certification exists.

46. This is similar to the CMS regs for 2019 to 2025 which stated:

HST scoring must be performed by an individual certified by the Board of Registered Polysomnographic Technologists as a Registered Polysomnographic Technologist (RPSGT), or equivalent, or by a polysomnographic technician under the supervision of a RPSGT, or by a Registered Respiratory Therapist-Sleep Disorder Specialist (RRT-SDS) or a Certified Respiratory Therapist-Sleep Disorder Specialist (CRT-SDS), or equivalent. RPSGTs, RRT-SDS, CRT-SDS and polysomnographic technicians must meet the standards for such individuals promulgated by the American Academy of Sleep Medicine Standards for Accreditation of Laboratories for Sleep Related Breathing Disorders, or by the Accreditation Commission for Health Care, Inc. Standards for Accreditation for Sleep Programs or by the National Board for Respiratory Care (NBRC) Inc. and be licensed or certified by the state in which they practice, if such licensure or certification exists. The laboratory physician must review the entire raw data recording for every patient studied.

47. Studies done at a sleep clinic for a Medicare paying patient for which no registered polysomnographic sleep technologist is present are not compliant with regulations and claims for payments on those studies are each an FCA violation.

48. They are a further failure to comply with Independent Diagnostic Testing Centers.

49. Polysomnographic sleep tests are included in Medicare's definition of "medical and other health services."  42 C.F.R. §410.10(e).

50. The Jiva Health Defendants' ten polysomnographic testing facilities are classified as Independent Diagnostic Testing Facilities ("IDTFs"), which are facilities that furnish diagnostic tests and operate independent of a physician's office or hospital.  42 C.F.R. § 410.33.

51. In order to bill Medicare for sleep tests, an IDTF must employ qualified sleep technologists and other non-physician personnel to perform them.  42 C.F.R. § 410.33(c).  A state health or education department must license or certify non-physician personnel. Id.  IDTFs are required to maintain documentation of their employees' credentials. Id.

52. In states that do not have a specialty-specific licensing board, non-physician personnel "must be certified by an appropriate national credentialing body."  Id.  Examples of such credentialing bodies include the Board of Registered Polysomnographic Technologists (BRPT), which provides Registered Polysomnography Technologist (RPSGT) credentials, and the American Board of Registration of Electroencephalographic and Evoked Potential Technologists (ABRET), which provides Registered Electroencephalographic Technologist (R. EEG T.) Polysomnography credentials.

53. In California, individuals "responsible for the treatment, management, diagnostic testing, control, education, and care of patients with sleep and wake disorders" must register with the Medical Board of California.  Cal. Bus. & Prof. Code § 3575(a)(2) (effective Oct. 23, 2009); see also Cal. Code Regs. tit. 16, §§ 1379.40, et seq. (effective Feb. 18, 2012).  California law thus sets "the basic qualifications to perform the tests in question," as well as the "training and proficiency" standards, required of

sleep-clinic personnel.  42 C.F.R. § 410.33(c).

54. Of the ten Jiva Health sleep clinics, there are currently registered polysomnographic sleep technologists at only three locations, the Redding, Sacramento and occasionally (but rarely) Roseville locations.

55. The facility locations without any BRPT certified RPSGTs employed do not comply with CMS regulations for an IDTF.

56. A facility (IDTF) that seeks approval to provide services to Medicare beneficiaries must employ properly certified technologists and certify in its enrollment application that it has "technical staff on duty with the appropriate credentials to perform tests"; as well, it "must be able to produce the applicable Federal or State licenses or certifications of the individuals performing these services[.]" 42 C.F.R. § 410.33(g)(12).  If an IDTF receives approval to bill Medicare and later fails to meet these requirements, "CMS will revoke a supplier's billing privileges…"  42 C.F.R. § 410.33(h).  In addition, an IDTF must submit the names of all of its licensed or certified staff members in its initial Medicare application and must amend the application if the licensed or certified personnel change within 90 days.  See 42 C.F.R. § 410.33(g)(2); Medicare Enrollment Application, Form CMS-855B, Attachment 2 & Section 15: Certification Statement.

57. An applicant must certify that it understands the requirements it "must meet and maintain in order to bill the Medicare program."  Id.  An applicant must also must "agree to abide by the Medicare laws, regulations and program instructions" and to certify that it "understand[s] that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and

program instructions and on the supplier's compliance with all applicable conditions of participation in Medicare." Id.

58. Medicare requires approval for each sleep clinic location.

59. In order to bill Medicare Part B for diagnostic services, an IDTF must separately enroll each of its practice locations, each of which must list all licensed technical staff on duty, have in its possession all licenses and certifications of such staff, and timely amend its application to reflect any change in licensed or certified personnel (as described above).  See CMS IOM Program Integrity Manual, Publication 100-08, Chapter 10, Section 4.1.3.3; see also Medicare Enrollment Application, Form CMS-855B, Section 4: Practice Location Information.  An IDTF can have only one practice location on its Form CMS-855B enrollment application.  If an IDTF adds a practice location to its existing enrollment, it must submit a new complete Form CMS-855B application for that location and undergo a separate site visit there.  Each separately enrolled practice location of the IDTF must meet all applicable IDTF requirements. The location's failure to comply with any of these requirements will result in the revocation of its Medicare billing privileges.

60. The requirement of individuals and locations having non-physician medical personnel who have been certified by a licensing board is material to the certification of each study and of the IDTF locations.

61. As noted above, sleep clinics licensed as IDTFs must submit an Enrollment Application to CMS to participate in the Medicare program.  See Medicare Enrollment Application, Form CMS-855B.  This application includes a certification that the provider will abide by all applicable Medicare laws, regulations, and program

instructions.  See id. Attachment 2 & Section 15: Certification Statement.  An applicant also must certify that it "understand[s] that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions and on the supplier's compliance with all applicable conditions of participation in Medicare."  Id.

62. Separately, all Medicare Part B providers submit claims using Form CMS-1500.  Providers submit codes on this form that identify the services rendered and for which they seek reimbursement.  CMS Form 1500 requires providers to certify that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision."

63. Finally, providers that participate in any federal healthcare program may not make false statements or misrepresentations, or causing others to make false statements or misrepresentations, of material facts concerning payment requests.  See 42 U.S.C. § 1320a-7b(a)(1)-(2).

## VI.  THE VIOLATIONS

64. Defendants hired numerous unqualified and non-credentialed persons.

65. By hiring non-credentialed technologists, the Jiva Health Defendants were able to pay them at below-market rates.  Relator has knowledge of actual market rates from her work as a polysomnographic technician, having been a registered polysomnographic sleep technologist until her registration lapsed in 2019, and in the process of applying for re-registration.

66.  The requirement that certified personnel conduct sleep studies is material to the

United States.  Medicare and other federal health programs would not have paid sleep study claims for reimbursement had the true facts of the identity of personnel performing the sleep studies had been known.  The employment of qualified, licensed personnel goes to the essence of the bargain between Medicare and providers, as it is a requirement for enrollment as an IDTF.

67. Without having qualified, certified personnel performing the studies, the chances are greatly increased that the United States will not get what it is paying for: medical care to meet the beneficiary's medical needs.  Noncompliance with the requirement of certification is not minor or insubstantial.  Consistent with this, the United States routinely enforces the requirement of certification as is evidenced by enforcement actions brought against providers found to be not in compliance.

68. Defendants Imran Junaid, Jyoti C. Bhat, and Anita B. Bhat operate and have operated many Medicare approved IDTFs including the subject sleep clinics.  As a Medicare provider subject to the terms and conditions of Medicare enrollment agreements, as well as a host of federal laws that bind Medicare providers, the Jiva Health Defendants, and each of them, had actual knowledge of federal healthcare program billing and reimbursement rules.

69. Defendants, and each of them, made claims for payment to CMS and other government healthcare programs for sleep studies knowing that non-credentialed technicians provided the underlying diagnostic services and thus Defendants were not entitled to payment.

70. The standard CMS application form required the Defendants to certify the truthfulness of the information they submitted:

"I certify that the information contained herein is true, correct, and complete, to the best of my knowledge, and I authorize the Medicare program contractor to verify this information.  If I become aware that any information in this application is not true, correct, or complete, I agree to notify the Medicare program contractor of this fact immediately."

71. Jiva Health, Inc. and its managing officers including founder, Director and CEO Dr. Imran Junaid, M.D. and Jyoti Bhat and Anna Bhat who signed and caused to be signed requests for payment under the Medicare system are persons who committed a false claims act violation when they:

"(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of... [these subsections]"

31 USC § 3729

72. A person may bring a civil action for a violation of Section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government.  31 USC § 3730.

73. Based on the billing files and sleep study records that Relator saw, on her knowledge of the sleep technologists at the company where she is also a sleep technologist, and on some information obtained from other technicians, Relator learned that Medicare patients were receiving sleep studies from technicians who were not certified at clinic locations that did not have any technicians who were

certified, and that this was occurring at the vast majority of clinic locations.  It also occurred on some shifts for all clinic locations.

74. Relator cannot at this time specifically identify all of the false claims for payments that Defendants submitted or caused to be submitted because such information is in the possession and control of Defendants.  That information is saved in the applications Philips Respironics Sleepware G3, last known version 4.0.2.0, and "Sandman" (varies by location).  It is saved on company hardware at addresses which are not stated herein for privacy concerns.

75. Defendants directed and ratified all billing practices, submitted or caused the submission of claims for payment, and received federal government payments.

76. The United States of America, on behalf of the United States Department of Health and Human Services, and of the Centers for Medicare & Medicaid Services have been damaged by having paid to the Jiva Health defendants payment based on defendants' false claims act violations.

## VII. CAUSES OF ACTION

### Count One
### (Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)(A)–(C) (2009)
### against all named defendants

77. Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 of this Complaint.

78. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended in 1986 and again in 2009.

79. Through the acts described above the Defendants knowingly presented, or caused

to be presented, false or fraudulent claims to the United States Government for payment or approval.  31 U.S.C. § 3729(a)(1)(A).

80. Through the acts described above, Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C. §§ 3729(a)(1)(B).

81. Through the acts described above, Defendants conspired to commit the violations of subsections (A) and (B).  31 U.S.C. §§ 3729(a)(1)(C).

82. The United States Government, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

83. Defendants have damaged, and continue to damage, the United States in a substantial amount to be determined at trial.

84. Additionally, the United States is entitled to the maximum penalty of up to not less than $14,000 and up to more than $28,000 for each and every false claim or statement.  United States v. Munoz-Escalante, 5:14-CV-05085-KES, 9-10 (D.S.D. Oct. 20, 2015.

## VII.  PRAYER

WHEREFORE, Relator prays for judgment against Defendants as follows:

That Defendants cease and desist from violating 31 U.S.C. § 3729 et seq.;

That this Court enter judgment against Defendants for all actual, incidental and/or consequential damages sustained by the United States of America;

That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants'

actions, plus the maximum civil penalty permitted for each violation of the False Claims Act including as set forth in United States v. Bornstein;

That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

That Relator be awarded all fees, costs, and expenses incurred in connection with this action, including attorneys' fees, costs, and expenses including pursuant to 31 USC § 3729 (a) (3);

That the United States and Relator be awarded Pre- and Post-judgment interest at the highest legal rates where applicable; and

For such other relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: July 13, 2026

__/s/_____
William C. Dresser Attorneys
for Plaintiff Relator Deanna
Lynn Silva

2026_07_13_FCA Complaint

---

US ex rel Silva v Jiva Health, Inc., et al; ND Cal action _:cv-___
FCA Complaint